972 F.2d 1342
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
STATE FARM FIRE AND CASUALTY COMPANY,
Plaintiff-counter-defendant-Appellee,
v.
BRADFORD NATIONAL LIFE INSURANCE COMPANY, Defendant,
and
Steven J. Stanwyck; Steven J. Stanwyck, A Professional
Corporation Defined Benefit Pension Plan,
Defendants-counter-claimants-Appellants.
 No. 90-56133.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 10, 1991.
Decided Aug. 28, 1992.
 
 Before FLETCHER, D.W. NELSON and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Steven J. Stanwyck appeals from a declaratory judgment in favor of State Farm Fire and Casualty Company. The district court found that insurance policies State Farm issued to Stanwyck did not provide coverage for any libel committed by Stanwyck. The district court also concluded that State Farm has no duty to defend Stanwyck in the libel suit. We affirm.
 
 
 3
 * In 1986, State Farm issued a business office insurance policy to Stanwyck, an attorney. The parties agree that the policy, No. 92-62-9778-8 (the first policy), provided coverage for libel committed in connection with Stanwyck's business. That policy was in effect in early 1988 when Stanwyck began moving his business to a new office. He asked a State Farm agent to provide an endorsement to the first policy in order to extend coverage to the new office space. A State Farm representative told Stanwyck that State Farm would require him to obtain a new policy for the new office.
 
 
 4
 Stanwyck applied for the new policy and State Farm issued Policy No. 92-92-8980-8 (the second policy) in January, 1988. The new policy included an endorsement deleting coverage for personal injury including libel.
 
 
 5
 According to testimony that the district judge found credible, Stanwyck called a State Farm representative in March, 1988, to inquire about the endorsement removing personal injury coverage from the second policy. The representative explained that the second policy did not cover personal injury claims.
 
 
 6
 Later that year, either Stanwyck or someone in his office called a State Farm representative to cancel the first policy in order to avoid paying premiums on two policies. After receiving instructions to cancel the policy over the telephone, the State Farm representative sent a computer mail message to State Farm stating that Stanwyck wished the policy cancelled effective November 18, 1988, the date the policy was due to expire. On December 1, 1988, State Farm sent Stanwyck a notice of cancellation for the first policy.
 
 
 7
 On December 12, 1988, Stanwyck issued a press release describing his claims in a separate lawsuit he had instituted against the Bradford National Insurance Company. The press release and a resulting trade publication article based on the press release prompted Bradford to file a counterclaim against Stanwyck for libel.
 
 
 8
 Stanwyck wanted State Farm to provide his defense to the libel claim. State Farm initially agreed to provide the defense, but noted that it reserved the right to deny coverage and advised Stanwyck of his right to select independent counsel at State Farm's expense.
 
 
 9
 On June 1, 1989, State Farm filed a complaint for declaratory judgment in the district court seeking a judgment that neither of the policies covered damages arising out of Stanwyck's alleged libel and that State Farm had no duty to defend Stanwyck in the libel case. The district court ruled in State Farm's favor on both issues and Stanwyck now appeals.
 
 II
 
 10
 By an earlier order, we resolved the issue of whether the district court had subject matter jurisdiction by accepting State Farm's amendment to its complaint.
 
 III
 
 11
 Stanwyck's central argument is that the first policy, which provided libel coverage, remained in effect at the time of the alleged libel because it was not cancelled under the procedures specified in the policy. The policy provides in pertinent part that "[t]he named insured may cancel this policy by mailing to the Company written notice stating when thereafter such cancellation shall be effective." Stanwyck argues that his instruction to the agent to cancel the insurance was not effective because it was not in writing.
 
 
 12
 In this diversity case, we must follow California law. In a case involving similar policy language, the California Court of Appeal held that California law requires strict compliance with an insurance policy's requirement for cancellation. See Pacific Nat'l Ins. Co. v. Webster, 220 Cal.Rptr. 274, 277 (Ct.App.1985).
 
 
 13
 In Webster, the insurance company issued a liability policy covering property owned by the policy holders. The policy holders sold the property on December 17, 1981 and one of them asked their insurance agent what to do with the policy. The agent said "cancel" and the policy holder said "Okay."
 
 
 14
 On December 19, two days after the oral request for cancellation, an accident occurred on the property resulting in possible liability of the policy holders. The insurance agent did not send a written notice of cancellation to the company until December 29. He requested that the policy be cancelled effective December 17.
 
 
 15
 The policy in Webster had cancellation language comparable to the language in this case: the policy stated that the policy holder could cancel the policy by sending to the company written notice stating when "thereafter" the policy should be cancelled. The court in Webster found that the policy was still in effect on December 19, two days after the oral notice, because no written notice was provided to the company until several days after the accident.
 
 
 16
 While the Webster decision does not directly control this case, our decision rests on the logical inferences to be drawn from that decision. The opinion notes that "[w]ritten notice of cancellation could have been immediately mailed and delivered to respondent Pacific National on December 17 when [the policy holder] notified the [insurance agent]." Webster, 220 Cal.Rptr. at 277. This discussion shows that the agent's delivering of written notice to the insurance company would have satisfied the written notice provision of the policy. The court found only that such notice would not serve to retroactively cancel the policy.
 
 
 17
 In this case, the agent, on Stanwyck's instruction, provided written notice to State Farm on November 23, 1988 to cancel the policy effective November 17, 1988. Although under Webster there might be some question as to whether the policy could be retroactively cancelled, there is no question it was cancelled in writing before the alleged libel occurred the next month. Accordingly, we find that the first policy was not in effect when the alleged libel occurred.
 
 IV
 
 18
 * Stanwyck claims that even if the first policy was cancelled in November, 1988, State Farm still has a duty to defend him because a publication of the libel occurred in October, 1988, when the first policy undoubtedly was in effect. The plaintiff in the libel case, however, has made no claim of damages for any publication of the alleged libel in October, 1988, and in fact he makes no mention of the alleged earlier publication. We find that the record does not support Stanwyck's allegation that this alleged earlier publication implicates a duty to defend. See Tijsseling v. General Accident Fire & Life Assurance Corp., Ltd., 127 Cal.Rptr. 681, 683 (Ct.App.1976) (finding that an occurrence for insurance purposes is when a party is actually damaged).
 
 B
 
 19
 Stanwyck also argues that the second policy should be construed to provide libel coverage because he did not intend to lose his libel coverage when he purchased the second policy to cover his new office. An endorsement to the second policy clearly stated that personal injury coverage was not included. Moreover, the district court found that Stanwyck knew about the change in coverage because he called a State Farm representative in March, 1988, and inquired about the endorsement deleting coverage. This conclusion is supported by the record and is not clearly erroneous. We find there is no reason to construe the second policy to provide libel coverage.
 
 C
 
 20
 Stanwyck contends that the district judge should have disqualified himself from hearing this case because of his alleged personal knowledge of disputed facts in the case. We have not found anything in the record or in Stanwyck's arguments to indicate that he moved in the district court to disqualify the district court judge. Such motions normally are required before or at trial. See United States v. Conforte, 624 F.2d 869, 879 (9th Cir.), cert. denied, 449 U.S. 1012 (1980).
 
 
 21
 Stanwyck acknowledges in his argument that he knew during the trial of the facts supporting his argument for the recusal of the district judge. There are no exceptional circumstances justifying his failure to raise the issue before. Accordingly, he has waived the issue. See Conforte, 624 F.2d at 880.
 
 D
 
 22
 Stanwyck also argues for the first time in his reply brief that a "previously undisclosed mental impairment" of the district judge "requires reversal and fact finding" as to the extent the alleged impairment denied Stanwyck a fair trial. In addition to the problems caused by Stanwyck's raising the issue for the first time in his reply brief, he cites no legal authority for this argument and cites nothing in the record to support the claim. We disregard the issue. See United Food & Commercial Workers v. Food Employers Council, Inc., 827 F.2d 519, 522 & n. 2 (9th Cir.1987); Fed.R.App.P. 28(a)(4).
 
 E
 
 23
 Stanwyck also has waived the issue of whether the matter should have been tried before a jury because he participated in the bench trial without objection. See White v. McGinnis, 903 F.2d 699, 703 (9th Cir.) (en banc), cert. denied, 111 S.Ct. 266 (1990).
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3